IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| WILLARD WILDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:06-CV-200 |
| | ) |
| LINDA S. McMAHON, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 9] will be granted, and plaintiff's motion for summary judgment [doc. 7] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for benefits in February 2004, alleging a disability onset date of January 1, 2001. [Tr. 34]. Plaintiff later amended his onset date to March 1, 2003. [Tr. 217]. He is purportedly disabled by "[a]rthritis in spine, deterioration of discs, lupus,

arthritis, low sugar, [and] effects of stroke." [Tr. 41].

The parties agree that plaintiff's date late insured was March 31, 2003. [Tr. 196, 214]. Plaintiff must demonstrate that he became disabled on or before that date. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

Plaintiff's application was denied initially and on reconsideration. He then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in December 2005. On February 3, 2006, the ALJ issued a decision denying benefits. At step two of the sequential evaluation process, he concluded that plaintiff had no "severe" impairment - either currently or prior to the date last insured. [Tr. 14-15]. Plaintiff was accordingly found ineligible for benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on July 21, 2006. [Tr. 4]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through his timely complaint, plaintiff has properly brought his case before this court. *See* 42 U.S.C. § 405(g).

II.

*Background*

Plaintiff was born in 1945. [Tr. 34]. He has previously worked as pallet manufacturer and as a farmer. [Tr. 57, 199]. He is also currently the pastor of a small church. [Tr. 213].

Plaintiff continues to perform some farming activity. As of the date of his administrative hearing, he owned almost eighty acres of land and thirty-two cows. [Tr. 201]. Plaintiff can put out hay for the cattle [Tr. 201] and can operate a tractor to mow and bale the hay, although he allegedly stops every "20 minutes or so . . . to get out and walk around[.]" [Tr. 206]. Plaintiff claims that he has not performed more than eight hours of farm work per month since 2001. [Tr. 42].

III.

*Relevant Medical Evidence*

Plaintiff has been diagnosed with lupus since at least 1989. [Tr. 108]. He has complained of a history of arthritis since at least 1995. [Tr. 106]. He has been prescribed Naproxen since at least 2002. [Tr. 88, 90].

In October 2000, plaintiff complained of a strained back after lifting 130 pounds. [Tr. 94]. In June 2001, he suffered a pulled muscle in his back after "pulling up fence posts and rolling fence wire." [Tr. 92]. On October 28, 2003, plaintiff presented to Dr. Francis Goyeau "with back pain which is periodic, located in the low back, comes and goes, not specifically related to activity but often follows unusual activity. More severe in the last 3 or 4 days[.]" [Tr. 83]. An MRI that same date showed "perhaps minimal disc narrowing of the L2/3 level with somewhat more prominent" changes elsewhere in the lumbar area. [Tr. 109].

In March 2004, plaintiff received emergency room treatment after he dropped a church pew on his thumb. [Tr. 137]. An April 2004 lumbar MRI showed anterior disc space narrowing at L2-3 and central disc herniation at L5-S1. [Tr. 144]. At an April 2004 consultation with rheumatologist Aqueel Kouser, plaintiff was noted to appear "very comfortable and not in any acute distress." [Tr. 142]. Dr. Kouser suggested that weight loss could reduce plaintiff's back pain. [Tr. 143]. Dr. Kouser also suggested physical therapy and an epidural steroid injection. [Tr. 140]. Plaintiff declined both recommendations, instead "stat[ing] that he wants to apply for disability[.]" [Tr. 140].

Plaintiff was seen by cardiologist Barry Michelson in November 2004 following complaints of chest discomfort. Plaintiff denied any previous history of cardiac complaints. [Tr. 191]. He told Dr. Michelson that "he was diagnosed with lupus many years ago, but is 'in remission.'" [Tr. 191]. Dr. Michelson noted that plaintiff "works as a farmer, [and] is physically active[.]" [Tr. 191]. The following month, plaintiff underwent a five vessel coronary artery bypass. [Tr. 186]. After a July 2005 follow-up appointment, Dr. Michelson recorded that plaintiff "is doing well. He walks a mile and a half 5 days a week. He continues to work farming." [Tr. 182].

IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C.

4

§ 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Nonetheless, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490 (1951).

A claimant is entitled to disability insurance payments under the Social Security Act if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Claimants bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

V.

*Analysis*

A. Severity

Finding no "severe" impairment, the ALJ dismissed plaintiff's claim at step two. The "severe" impairment threshold is a "*de minimis* hurdle" to be "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a

6

medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (citation omitted). "Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience" at steps four and five. *Id.*

A claimant fails at step two if he does not demonstrate an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Stated in the reverse, an applicant should be rejected at step two only if the alleged impairment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). This severity threshold "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). Also, as noted above, the present plaintiff bears the burden of demonstrating that he suffered from a severe impairment on or before March 31, 2003 - his date last insured. *See Higgs*, 880 F.2d at 862.

Plaintiff contends that the ALJ erred "where he refused to find that the substantial health problems: herniated disc and degenerative disc disease causing pain; coronary artery disease which required by-pass surgery in December 2004; and lupus,

7

amounted to a 'severe impairment' on or prior to March 31, 2006 [sic]." This reviewing court, however, finds that substantial evidence supports the ALJ's step two conclusion.

The record documents no more than a slight impairment caused by lupus during the relevant time period. In fact, plaintiff told Dr. Michelson that "he was diagnosed with lupus many years ago, but is 'in remission.'" [Tr. 191].

Although plaintiff is likely correct that his heart disease did not develop "overnight," chest discomfort did not appear until more than eighteen months after the date last insured. [Tr. 191]. Further, in November 2004, plaintiff expressly denied any previous history of cardiac complaints. Plaintiff thus has not met his burden of demonstrating a severe heart impairment as of March 31, 2003.

As for plaintiff's back complaints, the objective record does evidence some degeneration seven months after the date last insured. [Tr. 109]. This condition, too, arguably did not appear "overnight." Nonetheless, the only two treatment events prior to March 2003 resulted from vigorous physical activity. [Tr. 92, 94]. The objective evidence prior to March 2003 does not confirm the degree of pain alleged. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). Further, seven months after the date last insured, back pain was noted to be merely "periodic . . . comes and goes . . . often follows unusual activity. More severe in the last 3 or 4 days[.]" [Tr. 83].

Other factors noted by the *Felisky* court do not weigh in plaintiff's favor. *See id.* at 1039-40. Although plaintiff testified that he works neither at farming nor preaching

8

for forty hours per week, activities such as feeding cattle, lifting church pews, operating a tractor, and delivering sermons are cumulatively inconsistent with the inability to work. Also, as late as November 2004, plaintiff was described by his cardiologist as "physically active." [Tr. 191]. In July 2005, Dr. Michelson recorded that plaintiff "is doing well. He walks a mile and a half 5 days a week. He continues to work farming." [Tr. 182].

Consideration of medication, frequency of pain, and its precipitating factors further do not weigh in plaintiff's favor. Pre-2004 complaints are sporadic and associated with "unusual activity" such as pulling fence posts. Pre-2004 prescriptions were only for an anti-inflammatory medication.

In sum, plaintiff has not met his burden of showing any "severe" impairment existing as of his date last insured. Substantial evidence supports the ALJ's conclusion, and that conclusion must accordingly rest undisturbed.

B. Use of Medical Advisor

Plaintiff also argues that the ALJ erred by not utilizing medical advisor testimony to infer the onset date of disability, pursuant to the Commissioner's Program Policy Statement SSR 83-20. This argument is unavailing. Because there is in this case an adequate medical record covering the relevant time period, medical advisor testimony was not necessary to infer the date of onset. *See McClanahan v. Comm'r of Soc. Sec.*, ___ F.3d ___, 2006 WL 3951833, at *5 (6th Cir. 2006). Further, SSR 83-20 is only applicable where there has first been a finding of disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.

9

1997) ("Since there was no finding that the claimant is disabled . . . , no inquiry into onset date is required.").

The final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

               s/ Leon Jordan
               United States District Judge